All right, we're back. The last matter on calendar is Mercola.Com v. Google, and it's 23-2608. Each side has 20 minutes. Good morning, Your Honors. Good morning. May it please the Court. John Krois for Appellants Mercola. I'd like to reserve a couple minutes for rebuttal in advance. So, Your Honors, this is a contract case, and ultimately the crux of our claims comes down to how the lower court interpreted a handful of contractual provisions in the TOS that applies to YouTube and Mercola. This adds a bit of an unusual aspect to a social media case, which is that we would be making exactly the same arguments if this were a case about widgets, because this really does come down to how we read 35 lines of a contract. And ultimately, the foundation of our argument, upon which essentially everything is based, is going to come down to this modifying the agreement provision in YouTube's TOS. So, do you agree with the district court's assertion that your client has narrowed its request and is not challenging YouTube's right to deny it a platform, but is only seeking access to its content? I don't agree, Your Honor, and the reason is I don't think we've narrowed our request. I think our request has always been angled at getting access to the data, which is to effectuate the ultimate goal of the modifying this agreement provision. I think we have referred to that in a number of different ways, and I know that the lower court mentioned that they saw that we had changed that. But respectfully, Your Honor, I don't think we have. I think we've been pretty focused on — But you're not seeking to keep the content up or the channel open? Not at all, Your Honor. In fact, that is what distinguishes our case from the Google case that just passed in front of you, is we are seeking to have a contractual provision enforced. And this is the provision. This is YouTube will provide reasonable advance notice of any material modification to this agreement and the modifications addressing newly available features to the service or modifications made for legal reasons may be effective immediately without notice. If you do not agree to the modified terms, you should remove any content you have uploaded and discontinue your service. So your claim, he's not — your client is not asserting any cause of action that does not depend on the reading of the modification clause. So that's where we center ourselves. I believe that — I believe that's correct, Your Honor. That is — that is crucial to essentially every claim that we have made, starting, of course, with our express breach claim. But you — of course, we have to construe that modification claim in the context of the contract as a whole and the other provisions. Absolutely. So let me start you off with this. The briefs discuss how there are other preservations of the contract that give Google leave to take down content in its version. Why shouldn't that be the driving force behind looking at this case as opposed to the notion of a modification? I think Your Honor is right that that is the driving force of this case. And our argument is, respectfully, that the lower court got the harmonizing of this contract wrong. Those provisions are in the agreement, provisions that state very clearly YouTube doesn't have an obligation to host, doesn't have an obligation to post, has discretion to remove people. But it also has this modifying this agreement provision. And the obligation in reading a contract, of course, is that we have to harmonize these provisions together. And the problem with the lower court's reasoning is that they didn't do so. By prioritizing those general disclaimers of reservation that YouTube made, they rendered the modifying this agreement provision essentially meaningless. They — which is an error. They put the general over the specific. Now, they should have modified the more general provisions using the more specific firm language of the modifying this agreement provision, because it is firm contractual language. I mean, we look to the ordinary sense of these words, and we know what the ordinary sense of words like will, any, except, unless are. The construction of this provision is it's an if-then-unless provision with no qualifications to it whatsoever. You would agree, if this didn't involve a modification of a policy, Google wouldn't have to give any advance notice before it takes down content. Is that — would you agree with that? I think the answer to that is complicated. In our case, I don't think that would apply. Well, it's got a lot of leeway to take down that content, right? Yes, yes. I apologize. Or maybe — No, no, no. Go ahead. Yes, YouTube — and there's no denying that. We're not challenging that. YouTube has a lot of leeway to decide what is on its platform. Our argument — So, again, let me be more specific. Yes, sure. I found the part that I think it makes — matters. The agreement says it may do so to take down this content without notice if content would cause harm to any user — Yes, sir. — or to a third party. So, if Google, in its discretion, deems content to be harmful to a user, it doesn't have to give any kind of reasonable notice in advance before it takes it down. Unless it triggers this modifying-disagreement provision. I think you're right, Your Honor, but this modifying-disagreement provision materially changes that situation. Because YouTube has those reservations of discretion, and had they rested on those, the situation would more resemble the hypothetical. But they didn't. They put firm contractual language in here making a series of if-then-unless promises. And this is firm language, Your Honor. I mean, there are really only a different from other cases addressing these. But you can see the difference between firm and infirm language and the difference between the Neeraj case and the Daniels case. In the Neeraj case, it's unqualified, reasonable advance notice. The court there said that it suspected that would require a reasonable advance notice. You can trust that with Daniels, where the provision said that they would give a notice for the reason of removal, but then it qualified that to high heaven with if we think it's reasonable, if we have a reasonable suspicion that it would be harmful to notify you, then we don't have to do that. Those kind of provisions don't have force. But a provision like this, a provision that says if-then-except with no qualifications, that has to have force. Because if it doesn't, it gets written out of the contract. And that's exactly what happened below with the lower court. It put the general reservations of discretion over the more specific one. It ultimately read it out of the contract. What about the community guidelines provision? Was that modified? The community guidelines provision? Correct. I believe that's where the modification was, Your Honor. Well, but they modify — it was a modification within that provision, correct? Meaning how it applied. Yes, I believe that's right, Your Honor. Is Your Honor's question whether it's a new modification or — My question is whether that's a modification of that provision as opposed to a modification of how the provision may be applied in Google's judgment. Your Honor, it is absolutely a modification of that provision. I think — I think that is crystal clear. Our allegations in the complaint include specifically the Washington Post article where YouTube says, this is a new policy, where they explain they needed a new policy, where they explain to develop that policy required them to consult with outside experts. We have YouTube's own actions where, clearly, they didn't think that they could remove Mercola safely without adding a new policy because they did so. We have YouTube's comments on the news and events page. Again, Your Honor, YouTube has been very clear in their own words that this is new, that this is something that they made a change of. And, Your Honor, I think it is clear, given — given the significance of the change, that it is a material change that would trigger this provision. But I guess what — what I'm a little resistant to is the notion that the contract should be read in a way where Google has given up its discretion to take down harmful content immediately without notice if it needs to. So let me — let me pose a question for you. What if Google had modified its policy to create a particular ban on videos that involve the creation of explosive devices? So now you have content that's dangerous and you have a modification of policy. And if a video came up, are you saying that Google could not, in its discretion, take down that video right away because it happened to be a modification of a policy? It's — it's given up its — its ability to take down harmful content immediately? I don't think it has entirely given up its ability to take down harmful content. I think, frankly, that represents an extreme edge case that is already covered by Google's community guidelines, which distinguishes it from this situation. Google's community guidelines absolutely already cover the kind — like, terroristic content, like, direct threats to violence. No, but I'm — but I'm — but I'm putting you to the test with a specific example of the — the — Google modifies to say you cannot have a video that involves the creation of an improvised explosive device. And so it's — it's — it's a furtherance of — of whatever policy, community guideline policy it had. Now Google has — because it's done that, it loses the ability to immediately take down that content unless it's given some reasonable notice to — to the — to the people? I — again, I think that that is a difficult hypothetical, but I think that — I think the answer is a qualified, they could be limiting themselves. But I think it — I think the reality is that that situation would not arise. But the problem by writing a — a very specific term like this is that they might limit themselves in that way. I — I'm not sure that I can give you a yes or no on that, Your Honor, because I suspect it is already covered. And I do think that those kind of modifications, depending on what they were and whether they were really material modifications, YouTube might be binding itself in unwise ways. Let me ask you this. What about the last clause of that modification paragraph that talks about a modification made for legal reasons may be effective immediately without notice? Why — why couldn't this be construed as a modification made for legal reasons? Because YouTube made it for its own internal decisions. In fact, Google, I believe in the Kennedy case, just took exactly that position, generally speaking, on its content policies. It makes its content policies based on its own internal decisions. It was neither ordered by a court to do anything. It didn't say in any of its materials that it was making these changes because it feared liability, which it — it shouldn't because of Section 230. It focused entirely on YouTube's own desires, own speech, which is completely consistent with Google's position in all of these free speech cases, that it is making its own decisions here. I don't think that exception there applies at all. I think this provision applies with force. And I think — I think the problem with the express breach argument is that — or with the express breach decision below is that the court below emphasized the general over the specific. But I also think, Your Honor, that the court below erred in finding that our implied covenant claim was duplicative of our breach claim. I think that's very important. And I think the court — Sotomayor, did you raise the possibility of asserting a claim of unconscionability with the district court? No, Your Honor. No, you didn't. So is that out here? It is out here. We are making the argument, and we did ask for amendment below, but — But I'm saying is — I'm not saying is it out — is it here. I'm saying are you out of luck because you didn't raise it in the district court? Our argument would be in the interest of justice. So we — we — that is a tough position. In that — in that sense, it's more difficult than if we've raised it below. I don't think we're completely out of luck. I'm happy to turn to amendment quickly if — if you would like. I just want to make sure whether you'd raised it below or not. Absolutely, Your Honor. We did — we did not make that specific argument below, and our arguments on that in the brief were essentially in the interest of justice. But when it comes to the implied covenant, what the court below said was that it was duplicative of our express breach claim. And those claims can be duplicative, but they aren't always. And the question — this is goose. The question is whether or not it is exactly the same conduct that's being complained of, and it wasn't here, Your Honors. The conduct of the express breach that we're complaining of is merely the failure to notify. The conduct for the implied covenant breach is everything that YouTube did around that. We make a number of allegations to the point where there's — there is smoke here. We have YouTube's comments to The Washington Post saying that this was about Mercola specifically. If you look at The Washington Post article, actually, Your Honors, the first name in the first line is Mercola. We have the announcement both on the news and events and in the WAPO article to be timed within six minutes of removing Mercola from the platform. We have the notification of his removal having — having no explanation of what specifically in his videos he had done wrong. They promised — or they included a link to an appeals process that didn't exist. Ultimately, Your Honors, those are the bad-faith acts that support our implied covenant claim. Has YouTube been unjustly enriched by its retention of the contents of Mercola's posts? Yes, Your Honor. Yes, they have. How so? Three reasons. First, YouTube has retained all of the subscriber base from the 50 million views that Mercola and his organization brought to YouTube. YouTube has retained the ad impressions. And actually, I think maybe most importantly, YouTubers retain the videos, which have value. And moreover, I note that YouTube's retention of the videos is in some sense an admission that there is value there. Otherwise, I cannot understand why they would be keeping them. But, Your Honors, I think our implied covenant argument, especially at a motion-to-dismiss stage, is — is very strong. We've made a number of arguments here pointing to at least what I think are very plausibly bad-faith acts by YouTube. And I think the lower court was wrong to say this was duplicative. Can I add? So, I take it if Google were targeting Mercola, you're — how is it — you know, and let's just use the term without due process. How is that a violation of the covenant of good faith between the parties there? I think it comes back to the way that the covenant is — essentially, it is — these are — these are classic violations of the covenant in the restatement. It is abuse of power to specify terms. It is attempts to frustrate the legitimate expectations of the other party. It is attempts to interfere with the other party's performance. Those are all straight from the restatement. I think the allegations here, certainly at the plausibility standard, meet that. And I think that does touch on the intersection, too, of the discretion to remove and the notice promise that they made. That is another situation where they're abusing their ability to potentially specify terms. So, yes, Your Honor, I do think that activity plausibly violated. So, Google — Google does not have the right to unfairly single out Mercola for — for terms of the user agreement. I wouldn't go that far, Your Honor. I absolutely wouldn't go that far. I think this is far more fact-bound than that. I think the only — I think the reason that this claim works here is the very specific actions YouTube took that seemed to me plainly aimed at ensuring that Mercola could not get the notice that they said they wanted to provide. The 6-minute gap between announcing the policy and getting rid of him was obviously planned. I think that's the only reasonable implication from that. And those are the kind of acts. I don't think that we would be making a claim any more general than that about targeting Mercola. I think it's not just the targeting. It's the specific, specific acts that indicate that faith. Do you claim that Mercola lost the videos themselves insofar as they were uploaded, but he didn't keep a copy of them? Is that — is that part of the unjust enrichment claim as well? Yes, it is, Your Honor. And that goes to our relief as well. Mercola has lost most of these videos. He's lost all of his subscriber and user information. So I just — this is an ignorant question since I've never uploaded to YouTube, but why would he not have kept copies of the videos that he was planning to upload to the platform? I do not know the answer to that, Your Honor. I'm sorry. That's not on the record as far as I know. All I know is that the allegations that we made, in my personal understanding, is that the vast majority of those videos have been lost. And that — that actually gets to remedy real quick, because we are asking for specific performance. And specific — the specific performance that we're asking here is to bring into effect the third line of that modifying-disagreement provision, because that's what we're supposed to be doing, as I understand. We — we are attempting to find the — the intent of the provision. We're trying to bring it into effect to the extent that we can. And the third line of the modifying-disagreement provision says that once you have the notice, if you cannot or will not agree to that, you're supposed to take your content off. And that's the relief that we are trying to get at. I think that is why our discussions of the relief have — have used different language. But ultimately, that is the underlying desire. And there are a number of potential ways that could be achieved. That is ultimately a fact question. But the ability to see what the goal was, what the performance that should have been rendered was, I think is there. And more specific than that, I think, would be a fact question, Your Honor. I see that I'm 30 seconds from the time I'll have to stop. Would you like to reserve your time? Yes. I'd like to reserve whatever remaining time I have. Okay. Thank you. Thank you so much, Your Honor. Good morning. May it please the Court. Ari Holzblatt for Google. The District Court correctly dismissed all claims with prejudice. And I'd like to start where, Judge Sanchez, you were going, which is that Mercola's core claim here is the agreement required YouTube to continue hosting and serving his videos for some period of time after announcing the vaccine misinformation policy. Now, it's important. In announcing the policy, YouTube explained that it believed vaccine misinformation — I'm sorry, AR-155 — poses a serious risk of egregious harm. And it told Mercola it had suspended his channel to, quote — and this is from ER-181, the complaint itself — to protect other users on the platform. So to prevail, we have exactly what my friend called an edge case. Mercola must show that the agreement obligated YouTube to continue hosting and serving what it believed was harmful content, despite believing that that type of content risked egregious harm. That is not what the agreement says. The agreement is clear that YouTube may remove any content it, quote, reasonably believes may cause harm to our users or third parties, and that YouTube is under no obligation to host or serve content. The agreement's liability bar as well, which we didn't discuss before, but it's relevant here, also precludes any damages like this one for loss of data caused by removal of content. Now, Mercola's reading would override these provisions by saying that YouTube is obligated to continue hosting and serving content and that it may not remove harmful content for some undetermined period of time. But they're arguing now that they don't want the content up on the platform anymore. They just want the videos back. So why not give them the videos back? Two answers, Your Honor. The first is that as a matter of contract construction, they need to argue that there was a period of time when YouTube was obligated for that period of time to leave up their videos. And that argument about how to read the agreement conflicts with the plain language of the agreement. But I understand, Your Honor, to be asking, well, don't they have a right to retrieve their videos? What if they could get their videos back? And that's a different, I think, a different argument, actually, about what the agreement obligates. And that, too, is refuted by the specific provisions of the contract. The provisions that I just mentioned are the ones that specifically address YouTube's content removal authority. And again, they say that, quote, YouTube is under no obligation to host or serve content. There's two different words, host or serve. And what does host mean? Host means to store the content. What they are saying is that YouTube had an obligation to store the content so that they could now retrieve it. And the right of retrieval they're seeking conflicts with that language. And, in fact, the California Court of Appeal, in a very similar case, the Lewis case, addressed this exact question. And what it said, and I'm quoting, is nothing in the term suggests YouTube is a storage site for users' content. Now, there are other provisions of the agreement which speak to removing videos when possible. And they use, critically, different language than the language that my friend was pointing to. That's for service changes. And what they say is where reasonably possible, you will be provided with sufficient time to export your content from the service. That's at ER 144. But Mercola does not claim that there were service changes here. And the sentence he points to, and he quoted from the last sentence of the modification provision, actually contains different language. It doesn't use the phrase sufficient time to export your content. And so the — this is a contract case. We have to give effect to the meaningful difference in language that's used. Now, the core argument that my friend makes is he points to the modification clause. And he says that this would nullify the modification clause, notwithstanding the unequivocal language. But unlike the provisions that specifically address YouTube's content removal authority, this modification provision says nothing about YouTube's obligation to continue hosting or serving content. So I actually think the more — the specific provision that is implicated in a case like this is the provision that says you're not obligated to host or serve the content. You have discretion to remove that content. And, you know, I think Your Honor's example is an excellent one, Judge Sanchez, that, you know, YouTube expressly says we have the authority to remove harmful content, and we can do it immediately, even while simultaneously updating our guidelines to inform everyone that this is the kind of content that we believe can't stay up on the platform. And it's critically important if YouTube is operating a free platform for hundreds of millions of users that it be able to retain that kind of discretion. So what would be the harm in requiring YouTube to give advance notice that it was removing content or terminating an account? Precisely that, Your Honor. It would require YouTube to leave up what it has deemed to be harmful content. So let me give Your Honor another example. It's not the explosive example. It's the one I thought of. We all, I think, remember back when the Tide Pod challenges were moving around the Internet. Imagine suddenly people are starting to post challenges saying swallow these — you know, encouraging people to swallow or challenging them to swallow these Tide Pods. And YouTube may look at that and say, well, wow, that might encourage people to do that. We want to make sure that can be taken down. We're going to take it down immediately. And at the same time, we're going to let everyone know that you can't have this content up there. And the way we're going to do it is we're going to update our community guidelines. Under my friend's reading of the contract, they can't do that. If they're going to update the community guidelines, they have to leave up all of these videos challenging people to swallow Tide Pods. And that's a scary situation. And it's not tenable for someone who's operating a platform with this number of users. And it's not what the agreement says. Now, my friend also wanted to talk about the implied covenant. And so I want to make sure that I address his arguments there. First, you know, and I think it's important to mention this, the limitation of the liability bar. Yeah, I had a question. Hypothetically, if we determine YouTube improperly retain the content of Mercola's post, does the agreement's limitation on liability section bar monetary relief? Does it bar injunctive relief? It certainly bars monetary relief. And it speaks specifically to that. And I don't believe it bars injunctive relief. So I can take each of them in order. So with respect to monetary relief, it specifically refers to loss of data. YouTube will not be responsible for loss or corruption of data caused by any interruption or cessation of service or the removal or unavailability of any content. That language speaks precisely to what we have here. And I think definitely forecloses monetary relief. The question then is, what about specific performance? Now, specific performance, as your honors all know, is a limited remedy. It's not available in, you know, in a contract action. There's always circumstances where you might have a damages claim unless there's a liability bar. But there's a much narrower category of cases when you can have specific performance. And the test for that is there has to be a substantial similarity between the requested performance to the contractual terms. Classic would be, I've sold you this house, and now I'm telling you, you've got to  And so we have to look to the contract to see, is there a provision that is substantially similar to the requested performance? If the requested performance here is in order to order YouTube to give back the videos, then we look to see, is there any provision of the terms that require it to do that? And I've already cited the Lewis case, which says that YouTube is not a storage service for content. And in the language of the terms of service, which talks about not hosting, having no obligation to host content, all of those indicate that that's not required. And there's a practical issue here. But what about pointing to the term of the contract that talks about, is it for service modifications, giving someone notice of the change to give them a chance to offload the content from the platform? Why couldn't a specific performance be analogized to that provision, for example? It would be, that provision would have to be implicated for it to be analogized to it, and it isn't, because Dr. Mercola has not alleged a violation of that provision. So if he had alleged a violation of the provision, then we would be arguing about whether this was a service change. I think there's no question that it's not a service change. And so that's why he hasn't alleged a violation of that provision. But in order to trigger that, he would need to have alleged a breach of that provision. There can't be a substantial similarity between that provision and the claim here, if a condition predicate to that provision is that there be a service change, and there isn't a service change in this case. And there's a practical reason for this. YouTube is operating a platform for hundreds of millions of users. It's a free service, and it cannot be in the position of designing bespoke relief every someone gets upset when it changes, when it enforces its content moderation rules. It would be impossible to operate that platform. And so we, obviously, this case is coming to the Court as a single case, that is, where Dr. Mercola is raising his concerns about his videos. But we have to think about the implications of a rule like this and how it would hamper YouTube's ability to carry out the very important task for which it's retained discretion the plain language of the terms of service. If the Court has no further questions on remedy, I can talk about implied covenant very briefly. So Dr. Mercola has raised the implied covenant claim. There's a limitation of liability question. I think there's no question the limitation of liability provision also bars this claim. The plain language of that provision says that, quote, any claim based on any legal theory is covered. That's at ER 188. This Court, although it was an unpublished decision, but in the Darna case, applied very similar limitation bar, liability bar, to an implied covenant claim, and as did the Lewis Court in the California Court of Appeal. But the other problem, and this goes to the specific performance that Dr. Mercola is seeking, is that implied covenant is only available where it prevents one contracting party from of the agreement actually made. In the Gutes case, which my friend cited, is instructive here. The California Supreme Court explained that an implied covenant claim is a very narrow type of claim. It's only available to protect, to prevent frustration of benefits actually promised within the terms of service. And so I think it collapses with the merits question here. If Dr. Mercola was not entitled to the benefit that he claims under the terms of service, then he also can't have the benefit of the implied covenant. And on this, Gutes is very instructive. It explains that implied covenant claims are almost always going to be either duplicative of a contract claim or they are going to be invalid because they attempt to modify the contract. Now, my friend, also, there was discussion of unjust enrichment, and so I'd like to briefly address that. Unjust enrichment, the district court correctly dismissed the unjust enrichment claim because an unjust enrichment claim cannot live side by side with a breach of contract claim except in a narrow circumstance where the plaintiff pleads in the alternative that there is an invalid or unenforceable contract or that the or that it was procured by fraud. And we don't have that here. In fact, quite the opposite. At paragraph 94 of the amended complaint, Dr. Mercola alleges that the contract is valid and at no point does he plead in the alternative. And in paragraph 97, he says the contract is free from fraud. And so that alone should take care of the unjust enrichment claim. But even if it did not, there's no sense in which YouTube has retained a benefit. There is nothing beneficial to YouTube about having retained the videos here. It's taken them down. It's not attracting any traffic. And, in fact, that's how he pled his claim at paragraph 106. And then finally, Your Honors, there was a discussion of unconscionability. As my friend mentioned, he had this argument that was not raised below, and I think it would be fundamentally unfair to the district court where leave to amend is an abusive discretion standard, be fundamentally unfair to district courts to say, well, you can sandbag us on appeal by saying, well, I wanted leave to amend in a single sentence, but I never actually explained the theory that I wanted. So if the Court has no further questions about any of those or anything else, I'm happy to sit down. I do have one about the except for legal reasons clause of the modification. Do you agree that this modification would not have been made for legal reasons? Is that something that's been established here at all, or? It's not what we've argued. Okay. Okay. Thank you. Thank you very much. Thank you. Hello again, Your Honors. Just briefly on specific performance, I do not see a lot of daylight between the phrase being used in the modification of service provision and the phrases being used in the modification of this agreement provision. The modification of this agreement provision says reasonable advance notice, and during that time, if you don't agree, you're supposed to take your content off. I think you can put those together, especially for the purposes of trying to identify what the goal, what the intention of this provision was, to determine that that period was a reasonable period in which to remove that content. So I don't think the comparison to the service provision is opposite here. I would also note, Your Honors, that YouTube has a mechanism to accomplish exactly this. They have a link you can click out of their TOS to take you to a place to remove all of your content. So to the extent that we're discussing whether or not it's possible to craft a remedy, there's something out there already. I'd like to move to the limitation of liability issue real quick. I see I only have a minute and 20, but the limitation on liability agreement, I believe the lower court misread because it collapsed a two-part test into one statement. Because this is an unusual and articulated limitation on liability agreement. It does not resemble the one in Lewis. The one in Lewis is very straightforward. This one, however, in its pre-emulatory clause lists kinds of harm, including loss or corruption of data, which is the situation that we find ourselves in here. But it doesn't disclaim liability for all of that. In fact, it does the opposite. It only disclaims liability for those kind of harms if they are caused by seven enumerated causes. And this is very significant. I mean, this is an expressionist situation. By creating a closed list, it necessarily states there must be something outside this list that could apply to those pre-emulatory harms. That's the only reason you would create a closed list. And here, Your Honors, while our harm is loss of data, the cause is not anything on that list. Because the ultimate proximate cause is not that YouTube deleted it, which was always possible, but that YouTube didn't give us warning in advance to remove it. If we'd had what the contract promised us, which was the opportunity to remove it, then it would have been removed, and nothing YouTube did to the content afterwards could have harmed us. That's not on that list. Your Honors, I see that I'm out of my time. If there are other questions, I'm happy to take questions. Thank you very much, Mr. Price. Thank you both for your argument in this matter. This will be submitted, and this Court is in recess until tomorrow at 9 a.m. All rise.
judges: CALLAHAN, SANCHEZ, Kronstadt